UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Happy Home Health Care, Inc.

  Plaintiff,

v.

United States of America,

  Defendant.

**MEMORANDUM OF LAW
& ORDER**
Civ. No. 13-3646 (MJD/HB)

---

  Eric Johnson, Counsel for Plaintiff.

  Michael R. Pahl, United States Department of Justice, Tax Division, Counsel for Defendant.

---

Plaintiff Happy Home Health Care, Inc. ("HHHC") filed this action pursuant to 26 U.S.C. § 7426(a)(1) for the return of property it claims was wrongfully levied by the IRS. This matter is now before the Court on Defendant United States of America's (the "IRS") motion for summary judgment. (Doc. No. 13.)

## I.   Background Facts

HHHC is a business that was formed in 2004 to provide home-health services to Minnesota residents. (Pahl Decl. (Yang Dep. at 7).) HHHC is

1

owned by Sue Yang and Gaohmong Chang. (Complaint ¶ 9.) Yang operated HHHC as a sole proprietorship from 2004 to 2008. (Olson Decl. Exs. 1, 3, 4 and 6).) He also managed the employees, and ensured compliance with the rules and regulations of the Department of Human Services. (Pahl Decl. (Yang Dep. at 9).) A CPA was hired to perform payroll and accounting services for HHHC. (Id.) HHHC was incorporated in 2007, but Yang did not operate HHHC as a corporation until 2009. (Comp. ¶ 9.)

Yang also owns and operates Peev Tax Services, a tax preparation business. (Pahl Decl. (Yang Dep. at 6).) Yang operated this business as a sole proprietorship initially, but incorporated the business in 2007. (Olson Decl. Exs. 1, 3, 4 and 6); Pahl Decl. (Yang Decl. at 38).)

From 2005 through 2008, Yang incurred substantial personal federal income tax liabilities. (Comp. ¶ 10.) For the tax year 2005, Yang claimed a refund of $6,109. As part of this return, Yang filed Schedule C forms for three separate businesses, including HHHC and Peev Tax Services. (Olson Decl., Ex. 1.) The IRS conducted an audit, and determined that Yang failed to report $22,941 in interest income, and either under reported income or

overstated expenses, resulting in an assessment of $44,449.48 in tax, penalty and interest. (Id. Ex. 2.) For the tax year 2006, the IRS also found that Yang owed additional taxes, and was assessed $41,860.08 in tax, penalty and interest. (Id.) For the tax year 2007, the IRS again determined that Yang had not accurately reported his income and expenses, and was assessed $93,219.20 in tax, penalty and interest. (Id. Ex. 5.) And for the tax year 2008, the IRS assessed Yang $69,473.26 in tax, penalty and interest. (Id. Ex. 7.) Yang did not challenge any of these assessments, and he did not pay the amounts owed.

To collect on Yang's tax indebtedness, the IRS began issuing levies in the name of HHHC as nominee/alter ego/transferee of Sue Yang in 2013. (Comp. ¶ 11.) These levies were issued to parties holding property of HHHC, including HHHC's bank accounts and the Minnesota Department of Human Services, which had payables due to HHHC. (Id.) A total of $258,307.73 was collected through these levies. (Id. ¶ 12.)

HHHC claims that the IRS has incorrectly designated HHHC as the alter ego of Sue Yang, and that the property of HHHC has been improperly levied to pay the income tax debts of Sue Yang.

II. **Legal Standard for Summary Judgment**

Federal Rules of Civil Procedure Rule 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If, however, reasonable minds could disagree on a material fact, it is in genuine dispute and summary judgment is inappropriate. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact issue is material if the resolution of such will affect the outcome of the case. Id. Furthermore, all doubts or factual inferences should be resolved in favor of the opposing party. Matushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

III. **Discussion**

    A. **Wrongful Levy**

"The failure to pay federal taxes results in a lien on 'all property and rights to property, whether real or personal, belonging to' the delinquent taxpayer." Scoville v. United States, 250 F.3d 1198, 1201 (8th Cir. 2001) (quoting 26 U.S.C. § 6321).

Because such a levy will necessarily implicate the property rights of

> individuals other than the delinquent taxpayer, any person other than the delinquent taxpayer who claims an interest in the levied property may file an action against the United States under 26 U.S.C. § 7426(a)(1). To prevail, a plaintiff must demonstrate "an interest ... superior to the United States' interest in the property, and that the levy was wrongful."

Id. (quoting Bremen Bank & Trust Co. v. United States, 131 F.3d 1259, 1262 (8th Cir. 1997)).

Once the plaintiff has demonstrated an interest in the property levied on by the government, the burden shifts to the government to prove by substantial evidence a nexus between the property and the taxpayer. Venture Bank, Inc. v. United States, Civ. No. 11-3548 (ADM/JSM), 2013 WL 214399 at *4 (D. Minn. Jan. 18, 2013) (citing Xemas, Inc. v. United States, 689 F. Supp. 917, 922 (D. Minn. 1988)). The plaintiff bears the ultimate burden of proving the levy was wrongful and should be overturned. Scoville 250 F.3d at 1201.

To determine whether a particular asset is subject to a federal tax lien, courts "look initially to state law to determine what rights the taxpayer has in the property the Government seeks to reach, then to federal law to determine whether the taxpayer's state-delineated rights

qualify as 'property' or 'rights to property' under § 6321." Valley Minn., LLC v. United States, No. 06-cv-3667, 2012 WL 5389976 at *5 (D. Minn. Oct. 1, 2012) (citing Drye v. United States, 528 U.S. 49, 58 (1999)). Property of an entity that is found under state law to be the alter ego of a taxpayer may be levied to satisfy the debts of the taxpayer. G.M. Leasing Corp. v. United States, 429 U.S. 338, 350-51 (1977); see also United States v. Scherping, 187 F.3d 796, 801 (8th Cir. 1999).

In Victoria Elevator Co. v. Meriden Grain Co., the Minnesota Supreme Court held that "where the formalities of corporate existence are disregarded by one seeking to use it, corporate existence cannot be allowed to shield the individual from liability for damages incurred by those dealing with the corporation." 283 N.W. 2d 509 (Minn. 1979). In that case, the court did not allow the defendant to hide behind the corporate form where the evidence demonstrated that he co-mingled funds, did not clearly distinguish between property owned by him as an individual and of the corporation, combined tax returns of the corporation and his sole proprietorship, allowed the corporation to take deductions for property not owned by the corporation, did not charge the corporation rent for its

use of property owned by the defendant, misrepresented corporate assets and withdrew funds from the corporation at a time when the corporation was in financial trouble. Id. at 512. The fact that the defendant did observe some corporate formality, such as holding shareholder's meetings and issuing stock certificates, was not sufficient to allow the defendant to escape personal liability. Id. at 513.

Following the decision in Victoria Elevator, Minnesota courts employ a two-step analysis to determine whether to disregard the corporate form:

> In the first step, the court considers the relationship between the individual and the entity (typically a corporation), focusing on such factors as the "failure to observe corporate formalities, nonpayment of dividends, ... siphoning of funds [by the individual], ... absence of ... records [for the entity], and the existence of [the entity] as merely a facade for [the individual]." "Disregard of the corporate entity requires not only that a number of these factors be present, but also that there be an element of injustice or fundamental unfairness." Thus, in the second step, the court considers the relationship between the entity and the party that seeks to disregard it; only if the entity has operated in a fraudulent or unjust manner toward that party will the entity be disregarded.

Scherping, 187 F.3d at 802 (citations omitted).

### 1. Disregard of Corporate Formalities

The IRS contends that there is no material difference between HHHC, as a Schedule C business and HHHC as a corporation: both are run by Yang and both provide home health services to Minnesota residents. The address for both entities is 3300 Penn Avenue North, Minneapolis, Minnesota. When HHHC began operations as a corporation in 2009, no purchase of the sole proprietorship assets occurred, despite its value as an on-going business. The IRS argues that this lack of proper sale shows a general disregard for corporate formalities and supports a finding that HHHC is the alter ego of Yang.

The IRS further contends that HHHC improperly classified Yang as an "independent contractor" instead of an employee, despite being required to do so by law. See generally 26 U.S.C. § 3121(d)(1) (defining any officer of a corporation as an employee). By doing so, HHHC escaped its obligation to issue an IRS Form W-2 to Yang. (Olson Decl. ¶ 3 (stating that corporate tax forms for HHHC from 2009 through 2012 do not report any payments for officer's compensation).) In addition, from 2009 to 2013, HHHC did not issue IRS Forms 1099 to Yang. (Id. ¶ 4.) The IRS argues that

HHHC's mis-characterization of Yang's role as an independent contractor instead of an employee and subsequent failure to issue any IRS Forms for income reporting shows a failure to observe corporate formalities.

Yang did admit that in 2011, HHHC paid him $24,000, yet he only claimed $10,662 in income. (Olson Decl. Ex. 10; Pahl Decl. (Yang Dep. at 56).) He further testified that the difference is attributed to business expenses, including mileage, training, visiting and translating. Yet, as a trained tax-preparer, the IRS argues that Yang knew or should have known what that time spent with clients is not a deductible expense. In addition, the mileage expense for 2011 was .$.51 per mile. Thus, he would have had to have driven approximately 28,000 miles to take a $14,000 deduction.

In addition, HHHC's bank records for 2011 indicate several hand-written checks made out to Yang, many marked "payroll," which total to $60,500. (Olson Decl. Ex. 33.) These payments were not reported as officer compensation, nor reported through IRS-Form 1099. (Id. Ex. 32.) HHHC's and Yang's lack of appropriate documentation, the IRS argues, allowed Yang to avoid more tax liability by making it difficult for the IRS to determine how much income Yang had from HHHC.

The IRS also asserts that Yang was siphoning funds from HHHC for his own personal use. The IRS alleges that HHHC provided corporate funds to purchase a house for Yang. In 2008, Yang's home was lost in foreclosure. (Pahl Decl. (Mee Yang Dep. at 24).) Bank records indicate that a HHHC check for $49,290.58 was made payable to "cash" on the same date that Yang's house was purchased by his brother and nominee, Kong Yang. (Olson Decl. Exs. 23, 24.) The IRS further asserts that HHHC used corporate funds to pay for property taxes on the house. (Id. Ex. 25 (HHHC check made out to Hennepin County Treasurer).)

HHHC claims that there was no wholesale disregard of the corporate form. HHHC was properly incorporated and licensed by the Minnesota Department of Human Services, which provided most of HHHC's income in the form of reimbursements. HHHC maintains a separate bank account from Yang, which was used to deposit income and pay company expenses, and has filed corporate tax returns

HHHC further asserts that Sue Yang did not siphon funds from it for his own use. With regard to the check made out to cash in the amount of $49,290.58, HHHC admits the money was used to purchase a home at 8164

Noble Ave. N., Brooklyn Park, Minnesota, but that the money was provided to Kong Yang, Sue Yang's brother, as a loan.

The Court finds that based on the record before it, HHHC has demonstrated that there are genuine issues of material fact as to whether HHHC is the alter ego of Sue Yang. Corporate formalities were followed: HHHC maintained it own bank accounts and filed its own corporate tax returns. There are fact questions as to whether HHHC loaned money to Kong Yang for the purpose of buying a home, and the record is clear that HHHC funds were not used to pay household bills or other personal expenses of the Yangs. In addition, there is no evidence that HHHC took deductions for property it did not own or that it misrepresented corporate assets. Accordingly,

IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment [Doc. No. 13] is DENIED.

Date: March 31, 2015

s/Michael J. Davis  
Michael J. Davis  
Chief Judge  
United States District Court